# EXHIBIT A

EXECUTION VERSION

## CONFIDENTIAL SETTLEMENT AGREEMENT

This CONFIDENTIAL SETTLEMENT AGREEMENT (this "Agreement") is made and entered into by and between (i) PMC Consolidated Holdings LLC, a Delaware limited liability company ("PMC Parent"), (ii) Advanced Marketing and Processing, Inc., a Florida corporation ("AMP"), (iii) Protect My Car, LLC, a Delaware limited liability company ("PMC LLC"), and Protect My Car Admin Services, Inc., a Delaware corporation ("PMC Inc." and, together with PMC LLC, the "PMC Entities"), (iv) United Service Contract Group, LLC, a New Jersey limited liability company ("USCG LLC"), and United Service Contract Group of Florida, Inc., a Florida corporation ("USCG Inc." and, together with USCG LLC, the "USCG Entities"), (v) Craig Rubino, Joseph Rubino and Daniel Scaramellino (each, a "Seller") and (vi) SING for Service, LLC, a Delaware limited liability company, d/b/a "Mepco" ("Mepco") effective as of February 27, 2019 (the "Effective Date").  Each of the foregoing may be referred to herein as a "Party" or together as the "Parties."

WHEREAS, on January 1, 2017, (i) Mepco and the USCG Entities entered into an Administrator Agreement (the "USCG Administrator Agreement") pursuant to which Mepco agreed to provide funding with respect to certain service contracts administered by the USCG Entities on the terms and subject to the conditions set forth therein and (ii) Mepco and AMP entered into a Seller Agreement pursuant to which Mepco agreed to provide funding with respect to certain service contracts sold by AMP on the terms and subject to the conditions set forth therein;

WHEREAS, PMC Parent, PMC Entities, and USCG Entities represent that on September 5, 2018, PMC Parent acquired, among other things, AMP and the PMC Entities on the terms and subject to the conditions set forth in the definitive transaction documents relating thereto (the "PMC Acquisition");

WHEREAS, on August 1, 2018, Mepco and the PMC Entities entered into an Administrator Agreement (the "PMC Administrator Agreement") pursuant to which Mepco agreed to provide funding with respect to certain service contracts administered by the PMC Entities on the terms and subject to the conditions set forth therein;

WHEREAS, Mepco claims that, as of February 25, 2019, it is owed $17,495,894 (the "Claimed Liability") in respect of service contracts administered by the USCG Entities ("USCG Contracts") that were funded by Mepco;

WHEREAS, Mepco believes that additional amounts may be owed to it in respect of Mepco-funded USCG Contracts that were funded by Mepco prior to the Effective Date but not cancelled as of February 25, 2019 ("Potential Liabilities"; *provided* that Potential Liabilities shall not include any interest amounts, except in the event of a default, as set forth in paragraph 3(g) below);

WHEREAS, Mepco claims that each of the USCG Entities, AMP, and the PMC Entities are jointly and severally liable to Mepco for the Claimed Liability and the Potential Liabilities;

WHEREAS, the PMC Entities currently owe Mepco a past due Refund Amount of $3,416,453 in connection with funding that Mepco provided for service contracts pursuant to the PMC Administrator Agreement (the "PMC Liability");

WHEREAS, each of PMC Parent, AMP and the PMC Entities does not agree that any of them has any liability or responsibility of any kind—whether joint and several or otherwise—for the Claimed Liability or the Potential Liabilities; and

WHEREAS, the Parties desire to fully and finally resolve the Claimed Liability and all Potential Liabilities as set forth herein.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and intending to be legally bound, it is AGREED as follows:

1.      **Recitals Incorporated**.  The Recitals set forth above are hereby incorporated into this Agreement as if set forth at length herein.

2.      **Full and Final Resolution of Claimed Liability**.  In full and final satisfaction and discharge of the Claimed Liability:

    a.  Within two business days of the Effective Date, PMC Parent shall pay (or cause to be paid) to Mepco an amount equal to $10,250,000 in immediately available funds to the bank account specified on Mepco's signature page hereto.

    b.  Within five business days of the Effective Date, the PMC Entities shall provide a data file specifying, and initiate the transfer to Mepco of, 7,700 service contracts with an agreed net value to Mepco of $850 per contract, originated and sold by the PMC Entities (including through selling agents in the ordinary course) (the "Transferred Contracts"), in each case in a manner consistent with how the PMC Entities have historically transferred service contracts to Mepco.  Upon transfer, Mepco will be entitled to all customer installment payments received in respect of each Transferred Contract, and Mepco shall not be obligated to extend any Seller Profit or Seller Cost or any other funding to any other party or person with respect to any Transferred Contract. Within three business days of the Effective Date, the PMC Entities will deliver to Mepco a list of the Transferred Contracts.

    c.  With  respect to each such Transferred Contract, the PMC Entities and USCG Entities agree, warrant, and represent:

        i.  Each Transferred Contract is active and not currently cancelled and at least one payment in respect thereof has been made by the relevant customer to Mepco or to a PMC Entity at or prior to the time of the transfer to Mepco.  The PMC Entities will remit to Mepco any customer payments that the PMC Entities have received in connection with the transfer of the Transferred Contracts.  PMC represents and

warrants that the PMC Entities or their affiliates did not make the required customer payment prior to the transfer of the Transferred Contracts to Mepco.

ii. The Transferred Contracts will be customary and standard in all material respects to the type of service contracts that the PMC Entities had been financing with Mepco historically; the PMC Entities will administer and service the Transferred Contracts in the ordinary course and consistent with their standard business and customer service practices; the PMC Entities and AMP will not cancel the Transferred Contracts except upon customer request or consistent with past practice; and the PMC Entities and AMP will not intentionally attempt to induce customers to cancel the Transferred Contracts or attempt to induce customers to replace or substitute the Transferred Contracts with a different contract or product.

d. None of the PMC Entities or AMP will have any liability or obligation (financial or otherwise) to Mepco in respect of the Transferred Contracts, whether by virtue of the servicing of the Transferred Contracts or otherwise, including in connection with the cancellation of any Transferred Contract or any claims brought under any Transferred Contract.  For the sake of clarity, and notwithstanding the foregoing, the parties acknowledge and agree that this Section 2(d) shall not affect the Continuing Indemnification Obligation (as defined in Section 6 below) and any of the PMC Entities and AMP's service and refund obligations to the customers.

3. __Full and Final Resolution of Potential Liabilities__.  In order to fully and finally satisfy and discharge any Potential Liabilities that may arise through December 31, 2021:

a. Following the Effective Date of this Agreement, Mepco shall be entitled to receive from the USCG Entities, in each case to the extent required to satisfy and discharge any outstanding Potential Liability, the aggregate value of the following (collectively, the "Realized Value"):

i. Future net cash flows after claims and expenses generated from USCG Contracts that were not funded through Mepco, which shall be paid monthly to Mepco beginning on March 30, 2019, with subsequent payments continuing each month thereafter.  Sellers and the USCG Entities warrant and represent that they will not cancel the USCG Contracts except upon customer request or consistent with past practice and that Sellers and the USCG Entities will not intentionally attempt to induce customers to cancel the USCG Contracts or attempt to induce customers to replace or substitute the USCG Contracts with a different contract or product.

ii. Beginning on the Effective Date, any claims premiums that have accrued as of February 25, 2019, including any claims premiums that

are returned to the USCG Entities from Virginia Surety Company, Inc. ("Virginia Surety") in respect of USCG Contracts, shall be paid weekly to Mepco.  Notwithstanding the foregoing, Mepco has been informed by Sellers and agrees that (i) certain claims premiums in the amount of $2,000,000 that were accrued prior to the Effective Date and due to be returned to the USCG Entities were offset against amounts owed by the USCG Entities to Virginia Surety and will therefore not be paid to Mepco and (ii) an additional $800,000 of claims premiums accrued and due to be returned to the USCG Entities after the Effective Date will be offset against amounts due to be paid by the USCG Entities to Virginia Surety and will therefore not be paid to Mepco.[1]

iii.   The amount of seller cancel reserves (of $270 per contract funded, per the Seller Agreement) held by Mepco in respect of USCG Contracts in excess of the value of USCG Contracts that cancelled.

iv.   Any "tail payment amounts" paid to the USCG Entities in respect of USCG Contracts originated prior to the consummation of the PMC Acquisition.  The amounts set forth in the foregoing clauses (i) through (iv) (with the amounts set forth in the foregoing clauses (i) and (ii) based on the most current projections provided to Mepco) are collectively referred to as the "Projected Available Reserves."

b.   The parties have prepared a monthly projection of the amounts that Mepco will receive pursuant to the foregoing clauses (i)-(iv), which is attached to this Agreement as **Exhibit A**. The USCG Entities and the Sellers represent that all information set forth on such exhibit represents a good faith estimate of the amounts that Mepco can expect to receive based on an analysis of the sources of funds described in the foregoing clauses (i)-(iv) as of the Effective Date. Within five business days of the Effective Date, the USCG Entities and the PMC Entities will provide a signed statement from Virginia Surety (i) detailing the current amount of reserves held by Virginia Surety and Assurant related to the Transferred Contracts, (ii) detailing the current amount of reserves (estimated by the USCG Entities to be approximately $8.5 million) held by Virginia Surety related to the USCG Contracts, and (iii) acknowledging that Virginia Surety has received irrevocable instructions from the USCG Entities and the PMC Entities for Virginia Surety to transfer returned claims premiums to Mepco consistent with the terms of subparagraph (a)(ii) above.

c.   On June 30, 2020, Sellers, the USCG Entities, and Mepco shall work together in good faith to determine the sum of the aggregate amount of value realized by Mepco pursuant to the foregoing clauses (i)-(iv), the current value of the

---

[1]   Exhibit A reflects the net effect of the offset of the claims premium.

Projected Available Reserves, and the current outstanding balance of the Potential Liabilities owed to Mepco.  The portion, if any, of the outstanding balance of the Potential Liabilities due to Mepco that is greater than one hundred percent of the Projected Available Reserves shall be considered a deficit.  The USCG Entities shall take action within 5 days to correct the deficit by wiring immediately available funds to a bank account designated by Mepco in the amount of the deficit.

d.   A final reconciliation of the Potential Liabilities shall occur on December 31, 2021.  If the amount of the Potential Liabilities exceeds the amount of the Realized Value, the USCG Entities shall pay to Mepco within 10 days an amount equal to such difference in immediately available funds to a bank account designated by Mepco.  If the amount of the Realized Value exceeds the amount of the Potential Liabilities, Mepco shall pay to the USCG Entities within 10 days an amount equal to such difference in immediately available funds to a bank account designated by the USCG Entities.

e.   The USCG Entities will provide the following monthly reporting to Mepco with respect to the USCG Entities' contracts that were not funded through Mepco: (i) current active accounts; (2) consumer payments received; (3) consumer claims paid; (4) monthly cancellations; (5) other expenses paid; and (6) net cash flow.  The first such monthly report will be provided within five business days after the Effective Date, and subsequent reporting will be provided on a monthly basis thereafter.  The USCG Entities will further provide a full ledger balance to Mepco for the USCG Contracts every six months.

f.   To secure the payment of the Potential Liabilities, the USCG Entities grant to Mepco a security interest in all of the following (which are hereinafter referred to collectively as the "Collateral"): all assets of any kind of the USCG Entities, including, without limitation, all accounts, chattel paper (both tangible and electronic), goods, inventory, equipment, fixtures, payment intangibles, general intangibles, software, instruments, letters of credit, letter of credit rights, money, documents, deposit accounts, investment property, commodity contracts, commodity accounts and vehicles, and all products and proceeds thereof, whether now owned or hereafter acquired.  The USCG Entities will execute and deliver, or cause to be executed and delivered to Mepco such documents, instruments, financing statements, continuation statements, partial releases, termination statements, and such other documents as Mepco may deem necessary or appropriate to perfect Mepco's security interest in the Collateral.  The USCG Entities and Sellers will further take such action as may be necessary or appropriate to facilitate the transfer to Mepco of claims premiums returned to the USCG Entities from Virginia Surety.

g.   The USCG Entities' failure to pay any deficit amount pursuant to paragraph 3(c) above or failure to make the payment required by paragraph 3(d) above

shall constitute a material default and breach of their obligations under this Agreement and shall entitle Mepco to take action to enforce its rights to recover the entire remaining Potential Liabilities balance, including the exercise of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws.  Interest shall accrue at a rate of 1.5% per month on all outstanding amounts, and Mepco shall be entitled to its reasonable attorney fees incurred in any action or proceeding to recover any balance of the Potential Liabilities.  For the avoidance of doubt, none of PMC Parent, the PMC Entities, AMP or any of their affiliates may be held responsible for any default or any other liability or obligation of the USCG Entities or the Sellers pursuant to this Agreement.

4.     **Continuing Enforceability of USCG Administrator Agreement, PMC Administrator Agreement, and Seller Agreement**.  Subject to and without in any way limiting Section 6 hereof, all of the provisions and terms of the USCG Administrator Agreement, PMC Administrator Agreement, and Seller Agreement shall remain in force and effect and shall be fully enforceable by the parties to those agreements.  Subject to Section 6 hereof, this Agreement does not act as or constitute a termination of the USCG Administrator Agreement, PMC Administrator Agreement, or Seller Agreement.  Notwithstanding the foregoing or anything else in this Agreement, for the avoidance of doubt, (i) none of PMC Parent, the PMC Entities, AMP or any of their affiliates shall have any liability or obligation to any Releasing Party of any kind—whether direct or indirect—with respect to (A) any service contract administered by the USCG Entities, (B) any Transferred Contract, (C) any service contract administered by any person other than the PMC Entities, whether pursuant to the USCG Administrator Agreement, the PMC Administrator Agreement, the Seller Agreement or otherwise or (D) any service contract sold prior to the closing of the PMC Acquisition; and (ii) Mepco acknowledges and agrees that the Right of First Refusal set forth in Addendum A to the PMC Administrator Agreement applies only with respect to financing opportunities with third party payment plan providers.  For the sake of clarity, and notwithstanding the foregoing, the parties acknowledge and agree that this Section 4 shall not affect the Continuing Indemnification Obligation (as defined in Section 6 below).

5.     **Payment of PMC Liability**.  On the Effective Date, PMC Parent and/or the PMC Entities shall wire to Mepco an amount equal to the PMC Liability in immediately available funds to the bank account specified on Mepco's signature page hereto.  The PMC Entities will pay Mepco for all future service contract cancellations via wire transfer according to the terms and conditions of the PMC Administrator Agreement.

6.     **Release and Forbearance**.

a.   Effective upon execution of this Agreement, Mepco's receipt of the payments set forth in Sections 2 and 5 above, Mepco's receipt of the executed personal guaranty agreements described in Section 7 below, and Mepco's receipt of the data file relating to the Transferred Contracts as set forth in Section 2 above, in consideration of benefits provided herein, Mepco, and to the fullest extent that it has authority to do so, on behalf of its affiliates, and both its and its affiliates' past, present or future parents, subsidiaries, divisions, general

partners, attorneys, insurers, consultants, agents, employees, officers, directors, predecessors in interest, successors in interest, legal representatives, trustees, associates, heirs, executors, administrators and/or assigns (collectively, the "Releasing Parties") hereby irrevocably, unconditionally, fully, and forever releases, acquits, discharges and remises PMC Parent, AMP and the PMC Entities, as well as their respective affiliates, and both their and their affiliates' respective past, present or future parents, subsidiaries, divisions, general partners, attorneys, insurers, consultants, agents, employees, officers, directors, predecessors in interest, successors in interest, legal representatives, trustees, associates, heirs, executors, administrators and/or assigns, (collectively, the "Released Parties") from the Claimed Liabilities, Potential Liabilities, and any and all claims, contingent claims, counterclaims, debts, charges, complaints, obligations, expenses, third-party claims, liabilities, demands, losses, judgments, actions, suits, causes of action, accountings, rights, damages, punitive damages, and interests occurring or existing at or before the Effective Date (the "Released Matters").  For the avoidance of doubt, the parties expressly acknowledge and agree that the Released Matters include, and the release contemplated by this Section 6 extends to, the personal guarantees provided by Craig Rubino and Joseph Rubino to Mepco dated as of May 8, 2017, as well as all liabilities and obligations guaranteed thereunder.  For the sake of clarity, and notwithstanding the foregoing, the parties acknowledge and agree that this Section 6(a) does not release or otherwise affect the personal guarantees referenced in Section 7 below and attached hereto as **Exhibit B**.  The parties expressly acknowledge and agree that Released Matters do not include, and the release contemplated by this Section 6 does not extend to, (i) claims arising out of a material breach of the express obligations of PMC Parent or the PMC Entities set forth in this Agreement,  (ii) any of the representations, warranties, duties, and obligations of the PMC Entities and AMP pursuant to the PMC Administrator Agreement and the Seller Agreement, respectively, in each case solely with respect to service contracts administered by the PMC Entities (other than the Transferred Contracts), and (iii) with respect to AMP, the indemnification obligations set forth in paragraph 11(a)(ii) in the Seller Agreement with respect to the Transferred Contracts and the service contracts administered by the USCG Entities (including any service contracts or products that AMP sold in the state of California), except to the extent the applicable action, suit, proceeding, dispute, allegation or claim by the third party arises out of the misconduct of Mepco (the indemnification obligation set forth in this clause (iii), the "Continuing Indemnification Obligation").

b. Mepco (on behalf of itself and the other Releasing Parties) hereby represents and warrants that none of the Releasing Parties have assigned, sold, subrogated, transferred, or conveyed to anyone all or any part of, or any interest in, any Released Matter.

c.  The release contemplated by this Section 6 extends to claims that the Released Parties do not know or suspect to exist at the time of the release, which, if known, might have affected their decision to enter into this Agreement. Without limitation of the foregoing, Mepco (on behalf of itself and the other Releasing Parties) hereby waives and relinquishes, to the extent it is applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

In addition, Mepco (on behalf of itself and the other Releasing Parties) will be deemed to relinquish, to the extent they are applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of any law of any state or territory of the United States, federal law, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  Mepco (on behalf of itself and the other Releasing Parties) acknowledge that the Releasing Parties may discover facts in addition to or different from those now known or believed to be true with respect to the Released Matters, but that it is their intention to hereby completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all claims known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of additional or different facts.  Mepco (on behalf of itself and the other Releasing Parties) represents and warrants that it has read and understands Section 1542 of the California Civil Code and such similar laws and has had the opportunity to consult with and be advised by counsel regarding their meaning and effect.  Each Party acknowledges, and shall be deemed to have acknowledged, that the inclusion of this paragraph was separately bargained for and was a key element of the settlement and was relied upon by each of the Parties in entering into this Agreement. This Section 6(c) is not intended to expand on the scope of the releases in Section 6(a). This Section 6(c) does not imply that California Law applies to this Agreement in any respect.

d.  Mepco (on behalf of itself and the other Releasing Parties) hereby acknowledges and agrees that if Mepco or any other Releasing Party should hereafter make any claim or demand or commence or threaten to commence any claim, complaint, demand, action or proceeding against any Released Party with respect to any Released Matter, this Section 6 may be raised as a complete bar to any such claim, complaint, demand, action or proceeding, and the applicable Released Party may recover from Mepco all damages incurred in connection with such claim, complaint, demand, action or proceeding, including attorneys' fees.

7.     **Personal Guarantees**.   Craig Rubino and Joseph Rubino have agreed to personally guaranty the Claimed Liability and Potential Liabilities.   Copies of the executed guaranty agreements are attached as **Exhibit B**.

8.     **Payment Processing Cooperation**.   On and following the Effective Date, Mepco and its affiliates and representatives shall cooperate in good faith with the parties hereto and their affiliates and representatives with respect to processing customer payments under outstanding service contracts, including by permitting the parties and their affiliates and representatives to re-run previously-declined customer payments.   All payments received as a result of re-running previously-declined customer payments that were originally run by Mepco shall be transferred to Mepco within five business days of receipt of such payments by the PMC Entities, AMP, or their affiliates.

9.     **Confidentiality.**   The Parties agree to keep strictly and absolutely confidential the facts and terms of this Agreement, its contents, and the facts and circumstances of the negotiations between the Parties in reaching this Agreement, except insofar as the Parties may determine that they reasonably need to disclose the terms of the settlement:  (a) to a government agency, including but not limited to any regulator or local, state or federal taxing authority; (b) in response to a court order, subpoena, or request for documents in connection with any litigation, investigation, or administrative proceeding; (c) to their current or prospective auditors, accountants, insurers, financial advisors, lenders, investors, or counsel; (d) in connection with financial reporting; (e) to the extent disclosure is reasonably believed by the disclosing party to otherwise be required by law or regulation; or (f) in connection with any action to enforce its terms.  No Party may initiate any press or other public statements concerning this Agreement.

10.     **No Admission.**   Nothing in this Agreement shall be deemed to be an admission by any of the Parties of any allegation or claim, or of liability, wrongdoing or fault on the part of any Party.

11.     **Knowing and Voluntary**.   Each of the Parties certifies that he or it has carefully read and fully understands all of the provisions and effects of this Agreement; that each Party has been advised to consult and thoroughly discuss all aspects of this Agreement with his or its attorneys; that each Party is voluntarily entering into this Agreement; and that each Party is not relying on any representations concerning the terms or effects of this Agreement other than those contained herein.  Subject to and without waiving the representations contained herein, the Parties acknowledge that full and complete discovery with respect to the subject matter of this Agreement has not occurred, and that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to such subject matter, and with respect to any aspect of this Agreement, and agree that this Agreement and the releases contained herein shall be and remain effective in all respects, notwithstanding such different or additional facts and the subsequent discovery thereof.

12.     **Construction of the Agreement**.   The Parties jointly drafted this Agreement.  Any rule of law or any other statute or legal decision or common law principle that would require interpretation of any term or alleged ambiguity in this Agreement against the person or entity who drafted this Agreement is of no application and hereby is expressly waived and disclaimed and may not be utilized or relied upon by any of the Parties.  This Agreement is made

and entered into in the State of New York and shall in all respects be interpreted and enforced according to the laws of New York.

13.   **Severability**.  If any provisions of this Agreement are determined to be invalid or unenforceable, in whole or in part, the remaining provisions, and any partially invalid or unenforceable provisions, to the extent valid and enforceable, shall nevertheless be binding and valid and enforceable.

14.   **Governing Law; Jurisdiction**.  This Agreement shall be governed by the laws of the State of New York without reference to rules governing conflicts of law.  The Parties agree that any claim, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the United States District Court for the Southern District of New York or any New York State court sitting in New York City, so long as one of such courts shall have subject matter jurisdiction over such claim, action or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of New York, and each of the Parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such claim, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such claim, action or proceeding in any such court or that any such claim, action or proceeding brought in any such court has been brought in an inconvenient forum.  The prevailing party in any litigation in connection with this Agreement shall be entitled to recover from the non-prevailing party all costs and expenses, including, without limitation, the attorney fees incurred by such party in connection with any such litigation.

15.   **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties relating to the resolution of the matters set forth herein, and fully supersedes any and all prior agreements, understandings, or representations between any of them pertaining to the subject matter hereof.  Amendments to this Agreement, if any, shall be effective only if in writing and signed by all parties to the amendment.

16.   **Successors and Assigns.**  Neither this Agreement nor any obligations hereunder shall be assigned, delegated, or transferred by any Party except with the prior written consent of each of the other Parties. Any purported assignment in violation of this Section 14 shall be null and void *ab initio*.

17.   **No Third Party Beneficiaries.**  The provisions of this Agreement are for the sole benefit of the Parties and, in the case of Section 6, the Released Parties (who shall be express third party beneficiaries of such Section), and this Agreement is not intended to and shall not be construed to give any other entity or individual any interests or rights (including, without limitation, any third party beneficiary rights), except as expressly provided for in this Agreement.

18.   **Counterparts/Signatures.**  This Agreement may be executed in any number of counterparts and delivered by electronic means, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

19.   **Notice**.  Any notices, demands, or other communications required or permitted to be given by any provision of this Agreement shall be in writing and shall be (a) delivered personally to the Party or an officer of the Party to whom the same is directed or (b) sent by registered or certified mail, return receipt requested, postage and charges prepaid, or by express mail service (*e.g.*, Federal Express, UPS, or DHL) addressed as follows:

To:   The USCG Entities or the Sellers:
To:   PMC Parent, AMP or the PMC Entities:
Craig Rubino
PMC Consolidated Holdings LLC
570 Carillon Parkway, Suite 300
St Petersburg, FL 33716

with a copy to:

Alex Binderow
Crestview Advisors L.L.C.
667 Madison Avenue, 10th Floor
New York NY 10065

Michael Davis
Edmund Polubinski
Davis Polk & Wardwell LLP
450 Lexington Ave.
New York, NY 10017

To:   The USCG Entities or the Sellers:
Harold Hale
54 Hudson Street, Suite 101A
Freehold, NJ 07728

with a copy to:

Stephanie Baton
Hinckley Allen
100 Westminster Street, Suite 1500
Providence, RI 02903

To:   Mepco:
Kevin Diamond, CFO
Mepco
205 North Michigan Avenue, Suite 2200
Chicago, IL 60601

with a copy to:

Ronald G. DeWaard
Brion B. Doyle
Varnum LLP

333 Bridge Street N.W.
Grand Rapids, MI 49501-0352

or to such other address as such Parties may from time to time specify by written notice given in the manner provided above.

[*Remainder of page intentionally left blank*]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed the foregoing Agreement.


PMC   CONSOLIDATED   HOLDINGS LLC


By: _____*Craig Rubino*_____
    Name:  Craig Rubino
    Title:  CEO

ADVANCED        MARKETING     &
    PROCESSING, INC.


By:   _Craig Rubino_____
      Name: Craig Rubino
      Title:  CEO

PROTECT MY CAR, LLC

By: _Craig Rubino_____
    Name: Craig Rubino
    Title:   CEO

PROTECT    MY    CAR    ADMIN
   SERVICES, INC.

By: _Craig Rubino_____
   Name: Craig Rubino
   Title:  CEO

UNITED    SERVICE    CONTRACT
GROUP, LLC

By: *Craig Rubino*

Name: Craig Rubino
Title:  CEO

UNITED    SERVICE    CONTRACT
GROUP OF FLORIDA, INC.

By: _Craig Rubino_____
Name: Craig Rubino
Title:   CEO

*[Signature Page to Confidential Settlement Agreement]*

CRAIG RUBINO

_Craig Rubino_

JOSEPH RUBINO

Joseph Rubino

DANIEL SCARAMELLINO

SING FOR SERVICE, LLC

By: _____

Name: MARGARET L CHAN

Title: PRESIDENT

**Bank Account:**

SING FOR SERVICE, LLC
CREDIT CARD RECEIPTS
30 MAPLE ST
SUMMIT, NJ 07901-6501

Bank Name: JPMorgan Chase NA

Account Number: CONFIDENTIAL

ABA Routing Number: CONFIDENTIAL

[*Signature Page to Confidential Settlement Agreement*]

## **Exhibit A**

[Attached]

## **Exhibit B**

[Attached]