# EXHIBIT B

# SING FOR SERVICE, LLC
# ADMINISTRATOR AGREEMENT

THIS ADMINISTRATOR AGREEMENT (together with its appendices, the "Agreement") is dated as of January 1, 2017, by and between SING For Service, LLC, a Delaware Limited Liability Company ("SING"), and United Service Contract Group, LLC, a New Jersey Limited Liability Company ("Administrator") and United Service Contract Group of Florida, a Florida service contract obligor ("Obligor") collectively referred to as United Service Contract Group ("USCG").

*Certain capitalized terms are defined in the attached Appendix A.*

### Background

SING is in the business of servicing payment plan programs for sellers and administrators of Service Contracts.

USCG is in the business of administering Service Contracts sold by one or more of its affiliates ("Seller"). USCG would like the ability to allow Purchasers to pay for a Service Contract on a monthly basis, subject to Purchaser's right to cancel the Service Contract and related Payment Plan Agreement and receive a refund from USCG of any unearned payments. To this end, USCG will ask SING to enter into Payment Plan Agreements with Purchasers, which will allow Purchasers to pay for Service Contracts on a monthly basis, subject to such cancellation rights (the "Payment Plan Program").

The parties are entering into this Agreement to agree on the terms and conditions upon which SING will support and service USCG's Payment Plan Program.

### Agreement

Therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, SING and USCG agree as follows:

1. <u>Term</u>. The term of this Agreement shall commence on the date hereof and continue until terminated. Except for conditions in Addendum A, either party may terminate this Agreement upon 30 days' prior written notice to the other party for any other or no reason. In addition, SING may terminate this Agreement immediately upon an Event of Default by USCG.

2. <u>Service of Accounts</u>. Each Account shall be serviced in accordance with this Section. SING has the right to accept or reject any Account for any reason (or no reason) in SING's sole discretion.

(a)  *Account Requirement.* USCG covenants, represents, and warrants that it will cause each Account to meet all of the requirements set forth on the attached <u>Appendix B</u>, which may be modified from time to time by SING in the manner set forth in <u>Appendix B</u>.

(b) *Submission of Accounts to SING.* Within five (5) business days following a Purchaser's execution of a Payment Plan Agreement, USCG shall provide, or shall cause Seller to provide, SING with a verification of such Purchaser's Account by providing SING with (i) the fully-completed Payment Plan Agreement, duly executed by Purchaser, or such other documentation as specified from SING (ii) the amounts of the Sale Price, Down Payment, and Seller Cost for such Account, and (iii) such other information as may be requested by SING. USCG will ensure that all electronic data files and other information be delivered to SING in conformity with this Agreement, SING's standard seller agreement, and all other policies and procedures for the Payment Plan Program in effect from time to time. SING will rely on USCG with respect to the amount of the Sales Price, the Seller Cost, the Seller Profit and the Down Payment. Any dispute between USCG and the applicable Seller regarding the Sales Price, the Seller Cost, the Seller Profit or the Down Payment shall be resolved by USCG and the applicable Seller. SING has no involvement in the contractual relationship, economic or otherwise, between USCG and Seller, and USCG shall hold harmless and indemnify SING as to any disputes, of any nature, between USCG and Seller. USCG acknowledges that the Seller Cost for each Account is sufficient to cover: (i) all fees to USCG for administrative services related to the Service Contract, (ii) all amounts used to fund any reserve required by the Insurer or otherwise in connection with the Service Contract, and (iii) all amounts required to obtain the Coverage under the Policy with respect to the Service Contract.

1

(c) *Funding to USCG.* If SING chooses to accept an Account, SING shall pay the Seller Cost for such Account to USCG in accordance with and pursuant to SING's policies and practices in effect from time to time. SING's acceptance of any Account shall not be deemed a waiver or modification of any of USCG's obligations or responsibilities in this Agreement.

(d) *Funding to Seller.* SING shall pay the Seller Profit to Seller in accordance with and pursuant to SING's policies and practices in effect from time to time. In the event that USCG or SING ceases to accept new business from the Seller, the Seller Profit shall be paid to Seller only after all Seller's obligations to SING have been fully satisfied.

(e) *Status of Amounts Paid to USCG and Seller.* USCG hereby acknowledges and agrees that (i) irrespective of whatever the Service Contract may provide regarding the term for which the Service Contract remains in effect, for purposes of this Agreement, the Sales Price shall be earned on a daily basis over the term of the Service Contract, (ii) accordingly, the Seller Cost and Seller Profit are earned by USCG and Seller, respectively, on a daily basis over the term of the Service Contract, and (iii) the unearned portion of the Sales Price is the sole and exclusive property of SING. To the extent not owned by SING, USCG grants to SING a security interest in the following (the "Collateral"): (i) any portion of the Seller Cost and Seller Profit in the possession of SING or USCG, (ii) any and all assets of the USCG that are in the possession of SING, and (iii) the Coverage and the proceeds thereof. USCG shall execute and deliver to SING such other documents, instruments, financing statements, continuation statements, partial releases, termination statements and such other documents as SING may deem necessary or appropriate to perfect SING's security interest in the Collateral pursuant to applicable law. SING agrees that should a UCC be filed: 1) SING shall be responsible for all costs associated with filing, 2)upon termination of this agreement and the payment of all amounts due from USCG to SING, the UCC filing will be release within 20 working days.

(f) *SING's Right to Withhold.* Notwithstanding any provision in this Agreement to the contrary, in the event SING, in its sole discretion, deems itself insecure, SING shall have the right to (i) retain all or any amounts of Seller Cost and Seller Profit until such time as SING deems itself secure or (ii) require USCG to post a letter of credit or financial performance bond, in a form and amount acceptable to SING, to secure the obligations of USCG hereunder.

(g) *Administration of Service Contracts.* USCG shall solely and exclusively administer, service, and maintain the Service Contracts. USCG's obligations under each Service Contract include, without limitation the adjudication of claims, the payment of claims, the issuance of refunds to Purchaser upon cancellation of the Service Contract, and any other issues relating to the Service Contract itself. SING shall have no responsibility, liability, or obligations with respect to the administration, service, or maintenance of any Service Contract or any of USCG's obligations under this Agreement. Without limiting the generality of the foregoing, USCG shall be solely and wholly responsible for refunding to each Purchaser all amounts required to be refunded or paid to Purchaser upon any cancellation of the Payment Plan Agreement or related Service Contract. USCG acknowledges and agrees that any such amount owed to Purchaser is separate and different from the Refund Amount for such Account owing to SING pursuant to this Agreement, and USCG agrees that a Refund Amount owing to SING shall not be reduced by any refund paid to Purchaser as contemplated in this subsection. SING shall have no obligation to refund amounts to any Purchaser, and USCG shall not inform any Purchaser that SING is or may be obligated to refund such amounts. USCG may delegate its duty to issue refunds to a Seller, but shall remain liable for any failure of a refund to be properly paid. USCG shall cause to be paid or pay such refunds in full on a timely basis, in accordance with the terms of the Payment Plan Program, the Service Contract, and any applicable law.

3. <u>Cancellation.</u>

(a) *Cancellation by SING.* In the event of any default by Purchaser under a Payment Plan Agreement, SING shall have the right to immediately cancel the Payment Plan Agreement by sending written notice to the Purchaser, Seller and USCG. Upon receipt of such notice, USCG shall cancel the related Service Contract effective on the date set forth in the cancellation notice and pay to SING the Refund Amount in accordance with this Agreement.

(b) *Cancellation by Purchaser.* If USCG or the Seller of a Service Contract receives notice from a Purchaser that such Purchaser is cancelling its Service Contract, then USCG must (i) immediately notify SING in writing of such Purchaser's cancellation, (ii) treat the Service Contract as cancelled effective as of the date USCG or Seller received such notice, and (iii) pay to SING the Refund Amount in accordance with this Agreement.

(c) *Cancellation Statements.* SING shall

2



typically send USCG weekly, statements setting forth newly-cancelled Accounts, the Refund Amounts due to SING for such newly-cancelled Accounts, and the unpaid balances of any Refund Amounts from previous months. USCG shall pay to SING the Refund Amounts (or portions of Refund Amounts) that SING may demand from USCG from time to time. USCG acknowledges that SING may bill the applicable Seller of each cancelled Account a portion of the Refund Amount owed for such Account. To the extent SING collects any portion of a Refund Amount from the Seller, USCG's liability for the full Refund Amount for such Account shall be reduced accordingly. Notwithstanding any attempt by SING to collect any portion of a Refund Amount from Seller, USCG shall remain liable for the full balance of each Refund Amount, payable upon demand by SING. If USCG does not pay any amount owing pursuant to this Agreement within 30 days of the due date, interest shall accrue thereon at the rate of 18% per annum from the due date until payment is made. USCG shall have 30 days from its receipt of any periodic statement from SING to object to any part of such statement by sending a written objection notice to SING, which notice shall contain specific details of USCG's objection. If USCG fails to properly provide written notice of objection within such 30-day period, USCG shall be deemed to have conclusively agreed with such statement in its entirety.

(d) *Earned Reserve Premiums.* USCG acknowledges that, from time to time, a Seller may be entitled to receive funds from an Insurer or USCG with respect to reinsurance earned premiums or retro earned premiums according to an agreement or arrangement between the Seller (or a principal or other affiliate of Seller) and USCG or an Insurer (the "Earned Premiums"). USCG acknowledges and agrees that USCG shall, upon receipt of written notice from SING, forward any such Earned Premiums to SING and cause Insurer to forward any such Earned Premiums to SING. USCG will not distribute, and will prevent an Insurer from distributing, any Earned Premiums or other amounts to a Seller without SING's consent.

(e) *Right of Offset.* SING has the right to apply any amounts held by SING to which the Seller or the USCG has a right to any amounts due to SING from USCG or Seller.

(f) *Absolute Make-Whole Obligation.* USCG expressly acknowledges and agrees that this Agreement absolutely and unconditionally obligates USCG to make SING whole with respect to the Refund Amount for each cancelled Account, regardless of any action or omission of any Seller.

4. <u>Representations, Warranties and Covenants</u>

(a) *Each party hereby covenants, represents and warrants that:*

(i) Such party is, and at all times hereafter shall be, duly organized and existing and in good standing under the laws of the state of its formation, and is, and at all times hereafter shall be, qualified or licensed to do business in all states in which the laws thereof require such party to be so qualified and/or licensed

(ii) Such party has the right, power and capacity, and is duly authorized and empowered, to enter into, execute, deliver and perform this Agreement. This Agreement constitutes the legal, valid and binding obligation of such party and is enforceable in accordance with its terms.

(iii) The execution, delivery and/or performance by such party of this Agreement shall not, by the lapse of time, the giving of notice or otherwise, constitute a violation of any applicable law or a breach of any provision contained in its organizational, charter, governing documents or similar document or in any agreement, instrument or document to which such party is now or hereafter may be a party, or by which such party is or may become bound.

(iv) Such party is not in violation of any applicable statute, regulation or ordinance of the United States of America, of any state, city, town, municipality, county or any other jurisdiction, or of any agency thereof, in any respect materially and adversely affecting its business, property, assets, operations or conditions, financial or otherwise, and such party shall maintain in force and effect, all material government and other licenses and authorizations necessary for the conduct of its business.

(b) *USCG hereby covenants, represents and warrants that:*

(i) USCG will furnish SING with evidence that all amounts due to the provider of the Coverage (the "Insurer") for all Accounts have been paid to Insurer and that the Coverage exists and applies to all Accounts.

(ii) The Seller Cost and the Seller Profit are earned at a rate no greater than daily over the term of the Service Contract.

3



(iii) USCG shall cause all Sellers participating in the Payment Plan Program to execute and deliver to SING the standard seller agreement of SING.

(iv) USCG acknowledges and agrees that the Sales Price of the Service Contract to the Purchaser must be the same whether or not the Purchaser elects to purchase the Service Contract under the Payment Plan Program, and shall cause the Service Contracts to be sold on such basis.

(v) USCG has provided a true and correct copy of the Coverage to SING, and such Coverage is in full force and effect as of the date hereof. USCG represents and warrants that SING has been named as an additional insured and loss payee under the Coverage.

(vi) USCG shall provide SING with such information respecting the business and financial condition of USCG as SING shall deem reasonable or necessary from time to time.

(vii) At SING's request, USCG shall cause the Insurer to execute and deliver to SING an Unconditional Guaranty Agreement or other guaranty, satisfactory to SING, to fully guarantee the payment and performance of all obligations of USCG pursuant to this Agreement.

(c) *Legal Compliance*. USCG agrees to be responsible for ensuring that all activities associated with the solicitation, creation, maintenance, servicing, and cancellation of all Accounts, and any and all related activities, are conducted in compliance with all applicable federal, state, and local laws, rules, regulations, orders, and other directives of any kind (collectively, "Laws"). Without limiting the generality of the preceding sentence, USCG agrees to be responsible for:
(i) Seller's compliance with all Laws in connection with any and all activities performed (or required to be performed) by Seller in connection with this Agreement, and (ii) ensuring that the Service Contract, Payment Plan Agreement, and any and all other agreements, forms, disclosures, instruments, notices, and other documents entered into with or provided to a Purchaser conform with all Laws and contain all notices, requirements, and other disclosures required by any Law (regardless of whether or not any such documents are provided by SING to USCG or Seller).

(d) *EFT Laws*. Without limiting the generality of subsection (c) above, USCG specifically agrees to be responsible for compliance with the federal Electronic Funds Transfer Act and Federal Reserve Regulation E (each as may be amended from time to time and any and all successor Laws) and any similar state or local Laws (collectively, "EFT Laws") with respect to any payments made by a Purchaser to USCG, Seller, or SING pursuant to a Service Contract or Payment Plan Agreement by direct debit, ACH, or pre-authorized draft, regardless of the party (i.e., USCG, Seller, or SING) that would be primarily responsible for compliance under any such EFT Law. With respect to each such direct debit, ACH, or pre-authorized draft, USCG hereby represents and warrants to SING that the Purchaser has authorized such direct debit, ACH, or pre- authorized draft in accordance with all EFT Laws. USCG shall promptly provide copies to SING of all records evidencing such authorizations. SING's failure to require USCG to provide any such records shall not be deemed a waiver of USCG's obligation pursuant to the preceding sentence. To the extent that this subsection constitutes a delegation of duties required by any EFT Law by SING to USCG, USCG hereby accepts such delegation and agrees to be fully responsible for the performance of all such duties, as if it were primarily responsible under such EFT Law.

5. Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder.

(a) USCG shall fail to pay any amount due to SING within 10 days following the date when due.

(b) The Coverage shall not apply to any Account or the Insurer shall change without SING's prior written consent.

(c) USCG shall fail to comply with any representation, warranty or covenant of this Agreement, which failure remains uncured for 30 days following notice to USCG.

(d) A petition under Title 11, United States Code or any similar law or regulation shall be filed by or against USCG or USCG shall make an assignment for the benefit of creditors.

6. Remedies: Termination. Upon the occurrence of any Event of Default, (a) SING shall have the right to hold all amounts due to USCG and Sellers until all Accounts are paid in full (including collection by SING of all Refund Amounts); (b) SING shall have the right to terminate this Agreement on written notice thereof;
(c) SING shall have the right to seek any other remedy,

at law or in equity, to which it may be entitled; and (d) SING shall have a right of set-off against amounts due USCG or Seller in an amount equal any amounts owed by USCG or Seller to SING as a result of an Event of Default (the "Set-Off Amount"). SING shall not be obligated to pay future Seller Costs or Seller Profits until such time as the Set-Off Amount has been paid in full.

7. Indemnity.

(a) **By USCG**. Subject to the terms, conditions and limitations set forth in this Section 7, USCG shall indemnify, defend and hold harmless SING, its affiliates, and their respective owners, directors, managers, officers, principals, employees and agents from and against any and all losses, costs, obligations, liabilities, settlement payments, awards, judgments, fines, penalties, damages, deficiencies, claims or other charges, absolute or contingent, matured or not matured, liquidated or unliquidated, accrued or unaccrued, known or unknown and any and all expenses incurred in connection with investigating, defending or asserting any claim, action, suit or proceeding incident to any matter indemnified against hereunder (including court filing fees, court costs, arbitration fees or costs, witness fees, and reasonable fees and disbursements of legal counsel, investigators, consultants, accountants and other professionals) incurred or suffered by SING resulting from, in connection with, relating to or arising out of:

(i) Any breach by USCG or Seller of any of their covenants or agreements, or any failure of USCG or Seller to perform any of their obligations, in this Agreement, any agreement between SING and a Seller, any Service Contract, the Coverage, any other agreement between USCG and SING, or any other agreement or instrument contemplated hereby;

(ii) Any breach of any warranty or the inaccuracy of any representation of USCG or Seller contained or referred to in this Agreement, any agreement between SING and a Seller, any Service Contract, the Coverage, any other agreement between USCG and SING, or any other agreement or instrument contemplated hereby; and/or

(iii) Any action, suit or proceeding by a third party relating to any Account or the subject matter of this Agreement.

(b) **By SING**. Subject to the terms, conditions and limitations set forth in this Section 7, SING shall indemnify, defend and hold harmless USCG, its affiliates, and their respective owners, directors, managers, officers, principals, employees and agents from and against any and all losses, costs, obligations, liabilities, settlement payments, awards, judgments, fines, penalties, damages, deficiencies, claims or other charges, absolute or contingent, matured or not matured, liquidated or unliquidated, accrued or unaccrued, known or unknown and any and all expenses incurred in connection with investigating, defending or asserting any claim, action, suit or proceeding incident to any matter indemnified against hereunder (including court filing fees, court costs, arbitration fees or costs, witness fees, and reasonable fees and disbursements of legal counsel, investigators, consultants, accountants and other professionals) incurred or suffered by USCG resulting from, in connection with, relating to or arising out of:

(i) Any breach by SING of any of their covenants or agreements, or any failure of SING to perform any of their obligations, in this Agreement, any agreement between SING and a Seller, any Service Contract, the Coverage, any other agreement between USCG and SING, or any other agreement or instrument contemplated hereby;

(ii) Any breach of any warranty or the inaccuracy of any representation of SING contained or referred to in this Agreement, any agreement between SING and a Seller, any Service Contract, the Coverage, any other agreement between USCG and SING, or any other agreement or instrument contemplated hereby; and/or

(iii) Any action, suit or proceeding by a third party relating to any Account or the subject matter of this Agreement.

8. Miscellaneous.

(a) *Governing Law*. This Agreement shall be construed in conformity with the laws of the State of New York, without regard to its choice of laws or conflict of laws rules. The parties irrevocably agree that all actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, shall be litigated only in courts having situs within New York County, New York. Each party hereby consents and submits to the jurisdiction of any local, state or federal court located within New York County, New York, and waives any right it may have to transfer the venue of any such litigation.

(b) *Protection of Confidential Information*. The parties shall execute a confidentiality agreement in form and manner acceptable to SING.

5

(c) *Severability*. Any provision of this Agreement which is illegal, invalid, prohibited or unenforceable shall be ineffective to the extent of such illegality, invalidity, prohibition or unenforceability without invalidating or impairing the remaining provisions hereof.

(d) *Assignment*. USCG may not assign its rights nor delegate any duties under this Agreement without the prior written consent of SING., except in the event of a merger, consolidation, or a sale of all or substantially all of such party's assets, or to a parent or subsidiary of the party, such consent not to be unreasonably withheld. SING and its assignees may pledge its contract rights hereunder and any collateral documentation arising therefrom, including the assigning of Accounts, to any bank or other person that provides financing to SING in connection with the Payment Plan Program.

(e) *Prevailing Party Costs*. The prevailing party in any litigation in connection with this Agreement shall be entitled to recover from the non-prevailing party all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, incurred by such party in connection with any such litigation.

(f) *Notices*. Any notices and other communications required hereunder shall be in writing and deemed to have been given and received (i) when personally delivered, (ii) on the day sent by facsimile machine, (iii) one day after being sent by a nationally recognized overnight courier with guaranteed next day delivery or (iv) three days after being mailed by United States certified mail, return receipt requested, postage prepaid, to the parties at their respective addresses as set forth below. The foregoing shall not apply to cancellation statements, invoices, and similar communications sent from time to time by SING, which may be sent by email.

(g) *Survival of Rights*. Upon any termination of this Agreement, (i) the provisions of this Agreement shall survive and continue apply to all Accounts accepted by SING prior to the effective date of termination until either the full Payment Plan Amount or the full Refund Amount for each Account outstanding at the time of termination has been collected by SING in full, and (ii) the provisions of Sections 4, 6, 7 and 8 shall survive indefinitely.

(h) *Rights of Creditors and Third Parties*. The Agreement is entered into between USCG and SING for the exclusive benefit of USCG and SING and their respective successors and permitted assigns and is expressly not intended for the benefit of any other party. Except and only to the extent provided by applicable law, no creditor or other third party shall have any rights under this Agreement.

(i) *Counterparts*. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed to be the same Agreement. Signatures transmitted by fax shall be considered authentic and binding.

(j) *Further Assurances*. Each of the parties shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purposes of this Agreement and as are not inconsistent with the terms hereof. All documents delivered electronically shall be binding on the parties.

(k) *Waiver*. No Failure or delay by either party in exercising any right, power or privilege hereunder shall operate thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

(l) *Title to Accounts*. USCG hereby acknowledges and agrees that title to all Accounts (including all Payment Plan Agreements relating thereto and all amounts owing by a Purchaser Pursuant to any Payment Plan Agreement) shall at all times be vested in SING and its assignees, and neither USCG, Insurer, nor Seller shall have any right, title or interest therein.

6

SING and USCG have executed this Agreement as of the date first set forth above.

**SING:**

SING For Service, LLC
By: /s/ Margaret Chan

Name: Margaret Chan
Its:     President

10877 Wilshire Blvd, Suite 2005
Los Angeles, CA 90024
Attn:   Margaret Chan

**ADMINSTRATOR**

United Service Contract Group, LLC
By: /s/ Joseph Rubino

Name: Joseph Rubino
Its:     Chief Risk Officer

17 Broad Street, Unit 3
Red Bank, NJ 07701
Attn:   Joseph Rubino
Fax:    877-204-9105

**OBLIGOR**

United Service Contract Group of Florida
By: /s/ Joseph Rubino

Name: Joseph Rubino
Its:     Chief Risk Officer

14100 58th Street N.
Clearwater, FL 33760
Attn:   Joseph Rubino
Fax:    877-204-9105

7

# APPENDIX A

# CERTAIN DEFINITIONS

"Account" shall mean the account of any Purchaser that has entered into a Payment Plan Agreement administered by SING for the purchase of a Service Contract administered by USCG,

"Discount Amount" for a particular Account shall mean the amount SING is entitled to receive for the services provided by SING pursuant to this Agreement, which amount shall be as agreed upon by SING and the Seller of the Service Contract for such Account and may vary from Seller to Seller or with respect to different types of Service Contracts or Payment Plan Agreements.

"Down Payment" for a particular Account shall mean the amount of cash paid by the Purchaser to the Seller at the time of the Purchaser's purchase of the Service Contract and, in any event, prior to the Purchaser's entry into a Payment Plan Agreement.

"Payment Plan Amount" for a particular Account shall mean an amount equal to the difference between the Sales Price and the Down Payment. The Payment Plan Amount shall also mean an amount equal to the sum of the Seller Cost, Seller Profit, and Discount Amount.

"Payment Plan Agreement" for a particular Account means the agreement between SING and Purchaser to pay the Sales Price of a Service Contract (less the Down Payment) in installment payments, subject to Purchaser's cancellations rights set forth in the Service Contract and/or the Payment Plan Agreement.

"Purchaser" shall mean the individual or entity that purchases a Service Contract.

"Refund Amount" for a particular Account shall mean (i) the amount of the Seller Cost funded by SING, _plus_ (ii) the amount of the Seller Profit funded by SING, _plus_ (iii) the Discount Amount, _plus_ (iv) all late fees and other fees and charges assessed pursuant to the provisions of the Payment Plan Agreement, _less_ (v) any payments received by SING with respect to such Account.

"Sales Price" shall mean an amount equal to the price at which Purchaser purchases the Service Contract. This amount does not include any delinquent charges or other late payment charges which the Purchaser is otherwise required to pay pursuant to the Payment Plan Agreement.

"Seller" shall mean the person or entity who sells Service Contracts to Purchasers. The parties acknowledge that, with respect to some Accounts, the USCG may sell the Service Contract and there is no third party Seller involved. With respect to those Accounts, all references to Seller in this Agreement shall be deemed to refer to USCG.

"Seller Cost" shall mean the portion of the Payment Plan Amount (assuming the Payment Plan Amount is paid in full by the Purchaser) that USCG is entitled to receive.

"Seller Profit" shall mean the portion of the Payment Plan Amount (assuming the Payment Plan Amount is paid in full by the Purchaser) that the Seller for such Account is entitled to receive.

"Service Contract" shall mean any motor vehicle or home warranty or service contract that provides for the repair or replacement of, or reimbursement for the repair or replacement of, either motor vehicles and their covered components or home appliances and systems, including, without limitation, mechanical breakdown insurance policies.



## APPENDIX B

## CERTAIN ACCOUNT REQUIREMENTS

In addition to any other requirements set forth in this Agreement, each Account must meet the requirements set forth below. Notwithstanding any provision to the contrary in this Agreement, any Payment Plan Agreement, or any other agreement or instrument, as between USCG and SING, it shall be USCG's responsibility and obligation to ensure that each Account meets all of these requirements, and USCG covenants, represents, and warrants to SING that each Account will meet each of these requirements at all times:

1. The Seller must be a party to a written agreement with SING.

2. The Seller must inform the Purchaser of the terms of the Payment Plan Program only by means of forms and written communications supplied by, or reviewed and approved in advance by, SING, in its sole discretion.

3. The Seller must not make any written or verbal representation or warranty to the Purchaser that is inconsistent with the terms and conditions of the Payment Plan Agreement, this Agreement, or any other terms and conditions of the Payment Plan Program, as determined by SING in its sole discretion from time to time.

4. The Sales Price charged to the Purchaser is no higher than the Sales Price charged for the same Service Contract to a Purchaser who does not participate in the Payment Plan Program.

5. The Purchaser has duly executed and agreed to be legally bound by the Payment Plan Agreement.

6. The Seller collected from the Purchaser a Down Payment of at least 5% of the Sales Price of the Service Contract at the time the Purchaser entered into the Payment Plan Agreement.

7. The Service Contract has a term of 24 months or greater and requires USCG to pay the Purchaser a refund upon cancellation of the Service Contract calculated on a pro rata basis based on the number of days in the term of the Service Contract.

8. The Payment Plan Agreement has a term not more than 42 months.

9. The Payment Plan Agreement shall provide that Purchaser shall pay an amount equal to the Payment Plan Amount directly to SING by either (i) direct debit, ACH or pre-authorized draft against the Purchaser's checking account; (ii) direct monthly payments sent by the Purchaser to SING or (iii) pre-authorized charges to a credit or charge card of Purchaser acceptable to SING.

10. USCG shall be the obligor of the Service Contract.

11. The Purchaser shall have the right to cancel the Service Contract and Payment Plan Agreement at any time without further obligation.

USCG agrees that SING may amend this Appendix B, without the consent of USCG, by providing a new Appendix B at least 10 days prior to the effective date of such new Appendix B.

9



# Addendum A
## Right of First Refusal and Exclusivity

Right of First Refusal ("ROFR"): USCG shall present to SING during a period of no less than 36 months from the date of this Agreement for acceptance or rejection all payment plan and Service Contract financing opportunities in connection with the financing of Service Contracts for the business of service contracts ("PP Business") in which USCG desires to engage, directly or indirectly, by it or in conjunction with others. USCG shall notify SING in writing or any such PP Business and give SING thirty (30) days to accept or reject such PP Business. USCG shall not engage in or perform any PP Business, except for any active Payment Plan Agreements that was executed prior to the date of this Agreement unless such PP Business has been accepted or rejected by SING in writing within thirty (30) days of presentation of such PP Business to SING. If SING rejects such PP Business, then USCG may execute an agreement with a party other than SING for such PP Business on similar terms and conditions as those previously presented to SING. If the terms and conditions for the PP Business change significantly from those USCG originally presented to SING, then USCG must resubmit the proposal for PP Business to SING using the procedure described above.

Exclusivity:   SING and its affiliates shall not market or finance for payment plan with an equal installment payment term exceeding 36 months to any other VSC administrator or seller for as long the ROFR is in effect and the trailing 6 months average volume funded by SING and its affiliates is no less than 2,500. For avoidance of doubt, SING and its affiliates are free to structure "month to month" or "pay as you go" payment plans for any term with any administrator and or seller.

