UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- x
SING FOR SERVICE, LLC, d/b/a MEPCO, :
a Delaware limited liability       :        20-cv-8458 (JSR)
company,                           :
                                   :
                                   :        MEMORANDUM ORDER
        Plaintiff,                 :
                                   :
            -v-                    :
                                   :
UNITED SERVICE CONTRACT GROUP, LLC, :
d/b/a PROTECT MY CAR and PMC, a New :
Jersey limited liability company,  :
UNITED SERVICE CONTRACT GROUP OF   :
FLORIDA, INC., a Florida           :
corporation, CRAIG RUBINO, JOSEPH  :
RUBINO, and VIRGINIA SURETY        :
COMPANY, INC., a Missouri          :
corporation,                       :
                                   :
        Defendants.                :
----------------------------------- x

JED S. RAKOFF, U.S.D.J.

        Plaintiff SING For Service, LLC, d/b/a MEPCO ("Mepco") filed

this suit against defendants United Service Contract Group, LLC and

United Service Contract Group of Florida, Inc. (collectively,

"USCG"), Craig Rubino, Joseph Rubino, and Virginia Surety Company,

Inc. ("Virginia Surety"), alleging that defendants breached a series

of agreements relating to certain vehicle service contracts funded

by Mepco, administered by USCG, and guaranteed by Virginia Surety.

Virginia Surety has moved pursuant to Federal Rule of Civil Procedure

12(b)(6) to dismiss the Complaint. Mepco opposes this motion. For

the reasons set forth below, the motion is granted.

I.   Background[1]

USCG is an administrator of vehicle service contracts ("Service Contracts"). Compl. ¶ 16. "Service Contracts provide additional protection for automobile owners either by supplementing the protections of an existing factory warranty or by extending the coverage period beyond the expiration of a factory warranty." Id. ¶ 14.

Mepco provides funding to sellers and administrators of Service Contracts. Id. Mepco and USCG are parties to an Administrator Agreement with an effective date of January 1, 2017. Id. ¶ 17.[2] Under this agreement, Mepco will front the entire amount of a Service Contract to USCG, thereby enabling USCG to offer customers the option of making monthly payments to Mepco, instead of paying the entire amount of the Service Contract upfront to USCG. Id. ¶ 20. When a customer chooses monthly payments, it enters into a Payment Plan Agreement with Mepco. Id. ¶ 21.

---

[1]   The facts, taken from the Complaint ("Compl."), Dkt. No. 6, and documents incorporated therein, are, for purposes of this motion to dismiss, presumed true.

[2]   Although not directly relevant to this motion, the parties entered into a second Administrator Agreement, effective August 1, 2018, after USCG was purchased and underwent a name change. Compl. ¶ 40.

The present dispute implicates USCG's refund obligations to Mepco when a customer cancels a Service Contract. Under the Service Contracts (which are between USCG and the customer), the customer reserves the right to cancel the Service Contract and, depending on certain terms not here relevant, receive either a full or partial refund. Id. ¶ 22. Where the customer fronts the money herself, USCG will refund the money directly to the customer according to the terms of the Service Contract. Id.

But the refund process is more complicated when Mepco is involved. Under the Payment Plan Agreements (which are between Mepco and the customer), the customer assigns to Mepco the right to receive the refund amounts that would otherwise be due to the customer under the Service Contract. Id. ¶ 25. In addition, the Administrator Agreement (which is between USCG and Mepco), "triggers an independent refund obligation on the part of USCG to Mepco for the as yet un-repaid funding that Mepco advanced to USCG" -- the so-called "Refund Amount," which is defined in the Administrator Agreement. Id. ¶ 24. As a result, when a customer cancels a Service Contract for which Mepco has advanced funding, USCG's refund obligation to Mepco arises under two distinct agreements: (1) USCG owes the Refund Amount under the Administrator Agreement to Mepco; and (2) USCG owes the refund money under the

Service Contract to Mepco as an assignee of the customer pursuant to the Payment Plan Agreement. Id. ¶ 27.

Virginia Surety is the insurer and underwriter for USCG's Service Contracts. Id. ¶ 30. It issued Contractual Liability Insurance Policy No. 10136 (the "CLIP") to insure USCG against certain losses incurred in connection with its refund obligations. Id.; see also CLIP, Dkt. No. 6-3, at 2 (agreeing to "reimburse [USCG] for Loss," defined as a "Claim" to perform a "Contractual Obligation" under a "Designated Contract"). The CLIP also contains a Notice of Claim provision:

> [USCG] shall notify [Virginia Surety] of each Claim, and supply particulars of such Claim. [USCG] shall make such notification prior to undertaking any performance of a Contractual Obligation. [Virginia Surety] may reject any Claim if not notified of such Claim as provided above within ninety (90) days after such Claim first arose if [Virginia Surety] was prejudiced by the [USCG]'s failure to make notification within such time period, unless [USCG] shows that it was not possible to give notice within such time period and that notice of such Claim was given as soon as reasonably practicable.

Id. at 3.

The Administrator Agreement requires USCG, upon Mepco's request, to cause each insurance company that provides coverage for any of the subject Service Contracts to "execute and deliver to [Mepco] an Unconditional Guaranty Agreement or other guaranty, satisfactory to [Mepco], to fully guarantee the payment and performance of all obligations of USCG pursuant to this Agreement."

-4-

Administrator Agreement, Dkt. No. 6-2. Pursuant to that agreement,
Mepco initially requested that Virginia Surety guarantee USCG's
total Refund Amount liability to Mepco, as that term is defined in
the Administrator Agreement. Id. ¶ 31. But Virginia Surety declined
that request. Id. 32. Instead, Virginia Surety offered to "pay the
[customer's] refund amount to [Mepco] on behalf of [USCG] under
the terms of the [CLIP]" where "a [customer] has a loan outstanding
with [Mepco] in connection with an Insured Service Contract and is
entitled to a refund of a portion of the Insured Service Contract
retail price and [USCG] is unable to pay the [customer] the refund
when due under the Insured Service Contract." Virginia Surety
Guaranty, Dkt. No. 6-6. Mepco agreed and the document was executed
by Virginia Surety on May 22, 2018. Compl. ¶ 34. The Complaint
refers to this agreement as the "Virginia Surety Guaranty," id.,
although the word "guaranty" does not itself appear in the
agreement.

In reliance on the Virginia Surety Guaranty, Mepco "advanced
funding and conducted business with USCG during the Summer and
Fall of 2018." Id.[3] By early 2019, USCG was in default and in

---

[3]    On October 3, 2018, roughly four months after the Virginia
Surety Guaranty was issued, Virginia Surety revoked the Virginia
Surety Guaranty in a newly issued guaranty letter. Compl. ¶ 37. In
the October 3, 2018 letter, Virginia Surety limited the amount
that it would pay to Mepco to "unearned Insurance Premium[s]," if

-5-

material breach of the Administrator Agreement "based on the failure to pay its contractually obligated Refund Amount liability to Mepco for monies that Mepco had previously advanced to USCG." Id. ¶ 41.

As relevant to this motion, Mepco alleges that Virginia Surety "has not paid any amount to Mepco, in violation of its obligations under the Virginia Surety Guaranty." Id. ¶ 52; see also id. ¶ 78 ("Virginia Surety has failed to make the required payments under the Virginia Surety Guaranty and has thus breached its obligations under that agreement.").

II. Discussion

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, the Court generally looks to "the allegations on the face of the complaint," but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference," such as here, the Administrator

---

a customer cancelled a Service Contract. Dkt. No. 6-7. While the parties dispute the legal effect of this revocation, it has no bearing on the Court's resolution of the instant motion.

Agreement, the CLIP, and the Virginia Surety Guaranty. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

Mepco alleges that Virginia Surety breached its Guaranty. "In order to survive a motion to dismiss on a breach of guaranty claim in New York,[4] a plaintiff must plausibly plead '(1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant.'" Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc., 958 F. Supp. 2d 507, 521-22 (S.D.N.Y. 2013) (citing Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994) (per curiam)).

The Court holds that the Complaint fails to state a claim for breach of guaranty because Virginia Surety did not guarantee a payment of USCG's debt but simply agreed to redirect insurance payments from customers (as assignors) to Mepco (as assignee). In other words, Virginia Surety agreed to recognize Mepco's status as

---

[4]    Although Virginia Surety suggests that the case is "likely governed by Illinois law," it sees "no difference between the law of New York and Illinois law on the legal issues presented by this motion," and largely cites to New York law. Defendant Virginia Surety Company, Inc.'s Reply Memorandum of Law in Further Support of Its Motion to Dismiss the Complaint for Failure to State a Claim ("Reply"), Dkt. No. 32, at 5 n.2. USCG's brief, too, largely relies on New York law. See generally Plaintiff's Response in Opposition to Defendant Virginia Surety Company, Inc.'s Motion to Dismiss the Complaint for Failure to State a Claim ("Pl. Mem."), Dkt. No. 30. "Such implied consent . . . is sufficient to establish choice of law." Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014).

an assignee of the insured customers. Indeed, Mepco initially sought a guaranty along the lines of what it now seeks to enforce, but Virginia Surety specifically declined to offer one. Instead, Virginia Surety simply promised to pay customer refunds to Mepco under the terms of the CLIP. That is not a guaranty but an insurance agreement, and Mepco cannot sustain a claim for breach of guaranty on that basis.

If Mepco has a claim, then, it would be for breach of contract. In order to survive a motion to dismiss on a breach of contract claim in New York, a plaintiff must plausibly plead: "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011). As mentioned, the Complaint alleges that Virginia Surety failed to make the required payments under the Virginia Surety Guaranty and thus breached its obligations under that agreement. Compl. ¶ 74.

Virginia Surety contends that Mepco has not adequately performed under the Virginia Surety Guaranty. That agreement provides that Virginia Surety would pay customer refunds to Mepco "under the terms of the [CLIP]." The CLIP requires, among other things, that a Notice of Claim be provided within 90 days after a Claim arises. Yet, Virginia Surety points out, the Complaint does not allege any Claim having been made by USCG (or a customer or

Mepco) to Virginia Surety. Defendant Virginia Surety Company, Inc.'s Memorandum of Law in Support of its Motion to Dismiss the Complaint for Failure to State a Claim ("Def. Mem."), Dkt. No. 27, at 9. Mepco responds that it had no obligation to make a Claim under the CLIP because it is not an insured under that agreement. Pl. Mem. at 16-17. Mepco also contends that the phrase "under the terms of the [CLIP]" should be construed not as "a limitation or condition on liability, but rather [as] an affirmation that payment will be made by Virginia Surety under the CLIP." Id. at 17. Finally, Mepco suggests that the Notice of Claim requirement, even if applicable, permits Virginia Surety to reject a Claim only if it was "prejudiced by the Insured's failure to make notification." Id. at 18 (quoting CLIP at 3), and there is no prejudice here.

The Court agrees with Virginia Surety. Under the plain terms of the agreement, Mepco is entitled to recover from Virginia Surety under the terms of the CLIP. Having failed to abide by those terms, Mepco cannot state a claim for breach of contract. Nor is the CLIP's prejudice requirement relevant. That requirement simply prevents Virginia Surety from rejecting an untimely Claim without a showing of prejudice. Here, however, the Complaint is devoid of any allegation that any Claim, let alone a timely one, was made to Virginia Surety. Because Mepco fails to allege that it has adequately performed under the Virginia Surety Guaranty, its

breach of contract claim against Virginia Surety must be dismissed.[5]

Finally, Mepco requests that, should the Court find its pleadings inadequate, it be granted leave to amend. However, "[a] party seeking leave to amend must provide some indication of the substance of the contemplated amendment in order to allow the Court to apply the standards governing Rule 15(a)." Chechele v. Scheetz, 819 F. Supp. 2d 342, 351 (S.D.N.Y. 2011). Mepco suggests that "apart from any alleged technical deficiencies in the complaint the basic factual allegations easily set out a prima facie case for breach of guarantee contract." Pl. Mem. at 19. But, for the reasons discussed above, the Complaint's deficiencies are not

---

[5]    Virginia Surety also contends, less persuasively, that the Complaint must be dismissed because it fails to allege the underlying cancelled Service Contracts and corresponding Payment Plan Agreements that give rise to USCG's refund obligations, and because the Complaint fails to adequately allege damages. As for the underlying agreements, a general allegation that Virginia Surety was notified of each these refund obligations would likely have sufficed under Federal Rule of Civil Procedure 8; however, there are no such allegations because, as discussed above, Mepco has taken the position that it is entitled to payment without abiding by the terms of the CLIP. As for the damages, the Complaint alleges that Mepco "has been damaged by Virginia Surety's breach of the Virginia Surety Guaranty in a total amount in excess of $75,000." Compl. ¶ 79. That allegation is more than sufficient. See, e.g., Empire Merchants, LLC v. Merinoff, No. 16-cv-9590 (JMF), 2017 WL 5176384, at * 6 (S.D.N.Y. Nov. 8, 2017) (holding that plaintiff's "boilerplate allegations" that it has "suffered and will continue to suffer damages as a direct and proximate result of Defendants' breach of [contract] in an amount to be proved at trial" were sufficient to allege damages).

technical but substantive, and the Complaint fails to make out a prima facie case for either breach of guaranty or breach of contract. In the absence of any proffered basis to find that the defects in the Complaint could be cured through amendment, the Court denies Mepco leave to amend.

Accordingly, Virginia Surety's motion to dismiss for failure to state claim is hereby granted with prejudice. The Clerk of the Court is directed to close the entry at docket number 26.

SO ORDERED.

Dated:   New York, NY

January 7, 2021

United States District Judge